**Phillip James ROBERTSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 10–99–179–CR, 10–99–180–CR.**

Court of Appeals of Texas,
Waco.

May 3, 2000.

---

Mary Lou Crosbie, Denton, for appellant.

Bruce Isaacks, Criminal Dist. Atty., Gregory P. Propes, Cary Piel, Jonnie K. Cleveland, Asst. Dist. Attys., Denton, for appellee.

Before Justice VANCE Justice GRAY and Chief Justice McDONALD (Retired).

## OPINION

McDONALD, Chief Justice (Retired).

No. 10–99–179–CR is an appeal by appellant from his conviction for Violation of a Protective Order, for which he was sentenced to 10 years in the Texas Department of Criminal Justice, Institutional Division.

No. 10–99–180–CR is an appeal by appellant from his conviction for Burglary, for which he was sentenced to 20 years in the Texas Department of Criminal Justice, Institutional Division.

The two cases arose out of the same facts, and were tried together. There is one reporter's record and the briefs are identical.

Robin Robertson is a sergeant in the Hickery Creek Police Department. She was married to appellant, a police officer for the City of Lake Dallas at the time of their marriage. In *August 1998,* Robin secured a Temporary Protective Order against appellant, compelling him to leave the house in which he and Robin lived. The Order stated that Robin had sole possession of the house and prohibited appellant from coming in or near the house.

On *September 4, 1998,* Robin obtained a permanent protective order against appellant. In it, appellant was ordered not to go to or within 500 feet of the residence of Robin Robertson.

On *September 6, 1998,* at about 2 a.m., appellant called Robin. Appellant launched into an abusive harang, called Robin unspeakable names, and told her he was coming to kill her. Robin called the Denton County Sheriff's Department. Deputy Doug Lee arrived about 2:30 a.m. and took a report while speaking with Robin for about 30 minutes. After Deputy Lee left, he drove a short distance and stopped to do paperwork. Robin locked all doors, turned out the lights, and then heard a car door slam. She looked out the window and saw appellant approaching the house. She called for help on her police radio. After making the call, she heard appellant kicking in the front door. She repeated her call and then grabbed her service pistol, stepped into the hall and discovered appellant standing there six feet away. Appellant started walking toward her screaming, "I'm going to kill you." Robin began backing up while telling appellant to leave. Robin backed into her bedroom. Robin shot appellant in the legs to stop his advance towards her. Despite being shot appellant grabbed Robin's neck and began to choke her using a carotid restraint hold used by police officers to subdue violent prisoners. Deputy Lee, hearing Robin's call, returned at once to Robin's house and pulled appellant off of Robin. Appellant left bruises on Robin's throat and neck. Robin helped Deputy Lee administer first aid until appellant told her to, "get away from me you bitch." The bullet went through both of appellant's legs downward at a thirty degree angle according to crime scene reconstructionist Terry Kimball. Kimball testified that by the location of the bullet wounds, appellant was walking toward Robin when she shot him.

Appellant was indicted for Violation of a Protective Order and for Burglary of a Habitation.

The cases were tried together to a jury which found appellant guilty in both cases. Appellant elected to have the judge assess punishment, who assessed 10 years in the Violation of the Protective Order case, and 20 years in the Burglary case.

Appellant appeals on three identical points of error in each case.

Point 1 in both cases, asserts the trial court erred in denying appellants motion to inspect, examine and test physical evidence.

Point 2 in both cases, asserts the trial court erred in denying appellants request to provide funds for a defense expert.

Appellant filed a motion to require the State to produce all physical evidence in the case for examination by a defense expert, (i.e., clothing of appellant, all weapons used in the case, spent shells and bullets recovered at the scene). Appellant alleged the inspection, examination and testing of this evidence was essential to ensure his right to prepare a defense that due process of law guaranteed him under both the U.S. and Texas Constitutions.

Specifically, appellant contends that he was entitled to funds to hire an expert to

examine the physical evidence and that it was error for the trial court to deny his request for same.

◼ An indigent defendant has a right to a court appointed expert under certain circumstances. *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53.

◼ However, a defendant must show a "compelling need" for the assistance of an expert. *Matchett v. State*, 941 S.W.2d 922, 939 (Tex.Crim.App.1996). It is crucial that a defendant seeking appointment of an expert under Ake, make a preliminary showing that the expert assistance is necessary to address a significant issue at trial. *Moore v. State*, 935 S.W.2d 124, 130 (Tex.Crim.App.1996). To that extent a defendant "must offer more than undeveloped assertions that the requested assistance would be beneficial." *Id*.

◼ In this case, appellant only offered the trial court the kind of "undeveloped assertions" that have been held insufficient to require the appointment of an expert. The motion asked to test appellant's clothing, all weapons, ammunition and retrieved casings, by an expert. At the pretrial hearing, appellant never indicated to the court why he needed an expert to test physical evidence, or what he hoped to accomplish by the testing. Appellant said he wanted the Southwest Institute of Forensic Science to examine the physical evidence. The trial judge noted that he would not pay (Southwest Institute of Forensic Science) as an expert without knowing what they could do and how long it would take them to do it.

Appellant failed to provide the trial judge with the necessary information to justify the appointment of an expert. The trial judge thus did not err in failing to hire an expert to examine the physical evidence in this case.

Points 1 and 2 are overruled in both cases.

Point 3 asserts the trial court erred in denying appellant's motion for an instructed verdict (in the burglary case).

Specifically, appellant argues that the protective order did not give Robin a greater right of possession of the house that was jointly owned by Robin and appellant, and that without a greater right of possession in Robin, appellant could not be guilty of burglary.

◼ A challenge to the trial judges ruling on a motion for an instructed verdict is in actuality a challenge to the sufficiency of the evidence. *Cook v. State*, 858 S.W.2d 467, 470 (Tex.Crim.App.1993).

◼ The standard of review for legal sufficiency is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact, could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; *Williams v. State*, 937 S.W.2d 479, 482 (Tex.Crim.App.1996). The jury's verdict should be upheld unless it is found to be irrational or unsupported by more than a mere modicum of the evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

◼ The jurors are entitled to draw reasonable inferences from basic facts to ultimate facts. *McIntosh v. State*, 855 S.W.2d 753, 763 (Tex.App.—Dallas 1993, pet. ref'd). The jury may use common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving affect to the inferences that may reasonably be drawn from the evidence. *Wawrykow v. State*, 866 S.W.2d 87, 88–89 (Tex.App.—Beaumont 1993, pet ref'd).

The offense of burglary is defined in pertinent part: "if without effective consent of the owner, the person ... enters a habitation ... with intent to commit a felony ...." Tex. Penal Code, Section 30.02(a)(1). An owner can be someone who has "a greater right to possession of

**558**

the property that the actor." Tex. Penal Code, Section 1.07(a)(35).

Appellant asserts that the state failed to prove that Robin had a greater right to possession of the house that he did. Robin and appellant were co-title owners of the house. The protective order specifically prohibited appellant from "going to or within 500 feet of the residence of Robin Robertson." It is common sense that if a person is prevented by a protective order from coming within 500 feet of a residence, that person would have a lesser right to the present possession of the residence than the current occupant of that residence. "The greater right to possession doctrine does not credit rights that are unrealized at the time of the offense; instead we must compare the parties *actual* rights to custody and control of the property, on the date of the offenses." *Mack v. State*, 928 S.W.2d 219, 223 (Tex. App.—Austin 1996, pet. ref'd).

The protective order is in evidence. It prohibited appellant from coming within 500 feet of the house. Even though appellant may have been a co-owner of the house, Robin had a greater right of possession on the date of the offense, and as such was the "owner" for the purposes of the burglary indictment.

The evidence was sufficient to convict appellant of burglary of a habitation. The trial court did not err in denying appellant's motion for an instructed verdict.

Point 3 is overruled.

The judgment is affirmed.