In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-06-01051-CR

____________


STEPHEN CHARLES MACKAY, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 178th District Court 

Harris County, Texas

Trial Court Cause No. 1056865




 MEMORANDUM OPINION


 Appellant, Stephen Charles Mackay, appeals from a judgment sentencing
him to 10 years in prison for burglary of a habitation with intent to commit 
aggravated assault. Appellant pleaded not guilty; the jury found him guilty and
determined his sentence. In two issues, appellant challenges the legal and factual
sufficiency of the evidence by asserting that there is no evidence or insufficient
evidence to show that he entered the house without consent because he had
permission to enter the house by the owner of the house. We affirm. 

Background After he separated from his wife, complainant, James Koehler, moved into
Tom Slattery's house bringing clothing, property and a dog. Koehler and Slattery
were longtime friends. Slattery gave Koehler a key to the house and permission to
temporarily live there. On February 7, 2006, after he had been in the house for
about two weeks, Koehler received a threatening call from appellant. Later that
day, appellant appeared at the house banging on the front door, while holding a
firearm and threatening to kill Koehler. Appellant went to the back door, where he
shot into the house, causing Koehler to run out the front door. Koehler also saw
appellant break a window of the house. Koehler testified that appellant had no
permission to be in the house, nor did he have a key to the house. Koehler
described himself as the person who "had run of the house." 

 Deputy Whitaker responded to a 911 call to the house, where he found
broken glass near the front door. As he entered the house, he saw appellant
standing in the hallway, claiming he had dropped the gun. After he handcuffed
appellant, the deputy found a handgun in the hallway near where appellant had
been. The deputy noticed bullet fragments throughout the house.

 Deputy Whitaker saw Koehler running down the street reporting that
someone shot at him. Deputy Whitaker determined that Koehler lived at the house
based on Koehler's statement that he was "house-sitting" for a couple of days. 
Deputy Whitaker never spoke to Slattery, who could not be located.

 In his defense at trial, appellant called Slattery, the owner of the house. 
Slattery testified that he allowed Koehler to stay at his house for three to four days,
that Koehler was supposed to be gone on February 6, and that Koehler did not have
permission to be at the house on February 7, the day of the shooting. Slattery also
said that appellant had consent to be in the house on the day of the shooting
because he was allowed to enter the house at any time. During cross-examination,
Slattery acknowledged that on the day of the shooting, Koehler still had a key to
the house. Slattery also acknowledged that he knew Koehler was going to be at the
house on the day of the shooting to get the dog and other possessions. Although he
"assumed [Koehler] was going to be out" by Monday, Slattery testified that he was
"[n]ot for sure" since Koehler did not have a place to stay. Slattery said that
appellant did not have a key and did not have consent at any time to enter the
house by breaking open the door. Slattery testified that he did not know appellant
was coming to the house on the day of the shooting. 

 In his testimony, appellant acknowledged that he did not obtain consent
from Slattery to be in the house that day, but he explained that he had running
consent to be in the house. Appellant said that Slattery would lock the door when
he did not want him to enter the house. Although he claimed he found the
windows broken, appellant acknowledged that the screen door was locked. 
Appellant maintained he entered the house through a door that was unlocked and
partially opened. Sufficiency of the Evidence 

 In two issues, appellant contends that the evidence is legally and factually
insufficient to establish his conviction for burglary of a habitation because the
evidence is insufficient to show that he did not have the owner's consent to enter
the house. Appellant points to evidence that Slattery, the owner of the house,
allowed Koehler to stay at the house from February 3 to 6, but not on February 7,
the day of the shooting. Slattery also said that appellant had permission to be at the
house on the day of the assault and that Koehler did not. Appellant contends that
Koehler did not have a greater right to possession of the habitation than he, on the
day of the assault, since Koehler had no permission to be in the house that day and
appellant had permission to be there. 



A. Law Concerning Proof of Consent by Owner of Property 

 To establish that appellant committed burglary of a habitation, the State
must prove that appellant (1) entered a habitation, (2) without the effective consent
of the owner, and (3) with intent to commit a felony or theft. See Tex. Penal
Code Ann. § 30.02(a)(1) (Vernon 2003). Appellant challenges only the second
element. The Texas Penal Code defines "owner" as a person who has title to the
property, possession of the property, whether lawful or not, or a greater right to
possession of the property than the actor. Id. § 1.07(a)(35) (Vernon Supp. 2007). 
"Possession" means actual care, custody, control, or management. Id.
§ 1.07(a)(39) (Vernon 2003). Thus, any person who has a greater right to the
actual care, custody, control, or management of the property than appellant can be
classified as "owner." Alexander v. State, 753 S.W.2d 390, 392 (Tex. Crim. App.
1988). It is undisputed that Slattery was the person with title to the house. The
indictment and the jury charge both alleged that Koehler was the owner because he
had a greater right of possession to the house than appellant. 

B. Legal Sufficiency

 In a legal-sufficiency review, we view all of the evidence in the light most
favorable to the verdict and then determine whether a rational trier of fact could
have found the essential elements of the crime beyond a reasonable doubt. King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The jurors are the exclusive
judges of the facts, the credibility of the witnesses, and the weight to give their
testimony. Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). A
jury is entitled to accept one version of the facts and reject another, or to reject any
part of a witness's testimony. Id. Viewing the evidence in a light most favorable
to the jury's verdict, the record shows that Slattery gave Koehler permission to stay
at the house temporarily. On the day of the assault, Koehler had a key to the
house, his possessions and dog were there, and he alone had run of the house while
Slattery was out of town. However, although he did state that appellant had
permission to enter the house, Slattery also testified that appellant did not have
permission to enter by breaking into the property and that appellant did not have a
key to the house. We hold that, viewed in the light most favorable to the verdict,
the evidence is legally sufficient to show that Koehler had a greater right to
possession of the house than did appellant. See Robertson v. State, 21 S.W.3d 554,
558 (Tex. App.--Waco 2000, pet. ref'd) (holding evidence was legally sufficient
to support burglary conviction when appellant had right of possession, but right
was lesser than complainant's) (citing Mack v. State, 928 S.W.2d 219, 223 (Tex.
App.--Austin 1996, pet. ref'd)). 

 We overrule appellant's first issue. 



C. Factual Sufficiency

 When conducting a factual-sufficiency review, we view all of the evidence
in a neutral light. Cain v. State, 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). We
will set aside the verdict only if (1) the evidence is so weak that the verdict is
clearly wrong and manifestly unjust or (2) the verdict is against the great weight
and preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000). Under the first prong of Johnson, we cannot conclude that a
conviction is "clearly wrong" or "manifestly unjust" simply because, on the
quantum of evidence admitted, we would have voted to acquit had we been on the
jury. Watson v. State, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the
second prong of Johnson, we cannot declare that a conflict in the evidence justifies
a new trial simply because we disagree with the jury's resolution of that conflict. 
Id. Before finding that evidence is factually insufficient to support a verdict under
the second prong of Johnson, we must be able to say, with some objective basis in
the record, that the great weight and preponderance of the evidence contradicts the
jury's verdict. Id. In conducting a factual-sufficiency review, we must also
discuss the evidence that, according to the appellant, most undermines the jury's
verdict. See Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). The
fact-finder alone determines what weight to place on contradictory testimonial
evidence because that determination depends on the fact-finder's evaluation of
credibility and demeanor. Cain, 958 S.W.2d at 408-09. 

 Viewing the evidence neutrally, Slattery and appellant testified that
appellant could enter the house whenever he wished, including on the day of the
assault. However, the jury could have determined that that testimony lacked
credibility since appellant did not have a key and did not have permission to enter
when the door was locked or consent to enter the house forcibly. See id. Slattery
also testified that Koehler was supposed to have left the house by the day of the
shooting and had no right to be there. However, the jury could have determined
that this evidence lacked credibility because Koehler still had a key to the house
and also had his possessions and dog at the house. Also, Slattery qualified his
claim that Koehler had no consent to be at the house when he stated that he was not
sure whether Koehler would be gone and that he assumed Koehler would not be
there. Koehler, however, testified that he had "run" of the house while Slattery
was out of town and that he had consent to be there. We must defer to the jury's
determination that Koehler had a greater right to possession of the house than
appellant. See id. We conclude that the evidence is not so weak that the verdict is
clearly wrong and manifestly unjust, nor is the verdict against the great weight and
preponderance of the evidence. See Johnson, 23 S.W.3d at 11. We hold that the
evidence is factually sufficient. See Mack, 928 S.W.2d at 223 (holding evidence
was factually sufficient to support burglary conviction when appellant had right of
possession, but right was lesser than complainant's).

 We overrule appellant's second issue.

Conclusion

 We affirm the judgment of the trial court.






 Elsa Alcala


 Justice


Panel consists of Justices Taft, Keyes, and Alcala.


Do not publish. See Tex. R. App. P. 47.2(b).