

# IN THE
# TENTH COURT OF APPEALS

## No. 10-07-00100-CR

**CHARLES WEST,**

                                                          **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                          **Appellee**

**From the 19th District Court
McLennan County, Texas
Trial Court No. 2006-1005-C1**

## MEMORANDUM  OPINION

Charles West was charged in a seven-count indictment with the felony offenses of aggravated sexual assault and indecency with a child for allegedly engaging in sexual relations with his girlfriend's thirteen-year-old daughter.  The jury found West guilty on three counts of aggravated sexual assault and it assessed punishment at fifteen years in prison on each count, with count one running consecutive to count two.  West brings seven issues on appeal.  We will affirm.

**Background**

The offenses pertinent to this appeal were alleged to have been committed on January 4, 2006. According to the victim, on that morning West called her after her mother had left for work. She told West that she was "kind of mad" at him because he still had not taught her about the "real world" and showed her how to have sex like he previously promised. West told the victim that he was going to come over that morning, and she said that she was scared because she thought her mother might come home from work. West assured her that he would make up an excuse and park far away so that his car would not be seen. The victim testified that after engaging in various sexual acts with West, she heard the police knocking on the door. She quickly dressed and told the officers that she was home alone and the officers left.

Later, the victim talked to her friend about having sex with West on the morning of January 4. Her friend told her that she needed to tell her mother what happened, but the victim refused. Several days later, the victim's mother confronted her about what happened with West because the victim's friend had contacted her. The victim initially denied having sex with West but eventually admitted it.

The victim's mother took her to the Advocacy Center where Dr. Ann Sims examined her. Dr. Sims testified that the victim told her that her mother's boyfriend sexually assaulted her. During the exam, Dr. Sims noticed two marks on the victim's breast that looked like possible bite marks. She documented them by noting them in her report and taking pictures.

Linda Olson testified that on the morning of January 4, she saw West get out of his vehicle in the parking lot of Brazos Valley Dental Supply, where she worked. After West got out of the car, he began to look around and walk towards an adjacent apartment complex. She thought something was suspicious and called the police, who then spoke with the victim.

Several other witnesses testified including West. West denied assaulting the victim and stated that the reason he was at his girlfriend's house on January 4 was to install secret security equipment because he feared she was cheating on him. After hearing all the evidence, the jury found West guilty on three counts, and not guilty on the remaining three counts.

## Due Process

In his first and second issues, West accuses the State of engaging in prosecutorial misconduct by suppressing and misrepresenting material evidence, which violated his due process rights. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, he argues that the State refused to present police dispatch records from January 4, 2006, that showed how much time elapsed between when the police were called and when they arrived at the scene of the incident. Further, West complains that the State mislead the jury on the time frame allegations when it allowed witnesses to testify to the general times the calls were made instead of introducing evidence of the actual times. The State argues that the dispatch records were provided prior to trial and are not exculpatory.

To demonstrate reversible error under the *Brady* three-pronged test, a defendant must show that: (1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (2) the withheld evidence is favorable to him; (3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). Under *Brady*, the defendant bears the burden of showing that, in light of all the evidence, it is reasonably probable that the outcome of the trial would have been different had the prosecutor made a timely disclosure. *Id.* "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Id.*

A reviewing court determines materiality by examining the alleged error in the context of the entire record and in the context of the overall strength of the State's case. *Thomas v. State*, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992). The reviewing court may consider any adverse effect that the nondisclosure might have had on the preparation or presentation of the defendant's case in light of the totality of the circumstances and with an awareness of the difficulty of reconstructing the course of the defense and the trial in a post-trial proceeding. *Id*. at 405.

The prosecutor testified at the hearing on the motion for new trial that West's trial counsel met with her before trial and he was permitted to review everything in her file, including the police dispatch records. There is no evidence otherwise. Additionally, West conceded at the motion for new trial hearing that the State disclosed

the police dispatch report in the offense report. Evidence is not considered to be suppressed within the meaning of *Brady* if a defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence. *See Dalbosco v. State*, 960 S.W.2d 901, 903 (Tex. App.—Texarkana 1997, order), *disp. on merits*, 978 S.W.2d 236 (Tex. App.—Texarkana 1998, pet. ref'd). The record reflects that the prosecutor did not withhold evidence from West.

Even if we assume that the State withheld this evidence, West has not shown that the outcome of the proceedings would have been different had the police dispatch records been introduced at trial. Additionally, testimony given at trial matched the time frame suggested by the police dispatch report. The police dispatch report, which is the focus of West's first two issues, shows that Lieutenant Wells was dispatched at 9:18 a.m. and he arrived on the scene at 9:21 a.m. The report shows that Wells checked the area around 9:34 a.m. and cleared the scene at 9:48 a.m.

At trial, Linda Olson testified that on "January 4th 2006, sometime after 9:00 a.m." she was at work at Brazos Valley Dental Supply. She saw a black man drive into her parking lot but then walk around the back of the building. She thought it was unusual because he was looking around the sides of the building, "like he was playing hide and seek." She then called the police and gave them his license number. Wells testified that he was on duty on "January 4th, 2006, at around 9:20 a.m., give or take a few minutes," when he responded to a call from the area of Brazos Valley Dental Supply. After visiting with Olson and checking the area, he cleared the scene at 9:48 a.m. Thus, the evidence was cumulative and accurate and, in light of the evidence as a

whole, it is not evidence sufficiently critical that would create a considerable likelihood the outcome of the trial would be different. *See id.* at 903. We overrule West's first and second issues.

In his third issue, West argues that he was entitled to an expert forensic odontologist who could have assisted him in dealing with medical testimony regarding the alleged bite marks on the victim's breast.

Due process demands that an indigent defendant have a right to a court appointed expert under certain circumstances. *Ake v. Oklahoma*, 470 U.S. 68, 84 L.Ed.2d 53, 105 S.Ct. 1087 (1985). However, a defendant must show a "compelling need" for the assistance of an expert. *Matchett v. State*, 941 S.W.2d 922, 939 (Tex. Crim. App. 1996). It is crucial that a defendant seeking appointment of an expert under *Ake*, make a preliminary showing that the expert assistance is necessary to address a significant issue at trial. *Moore v. State*, 935 S.W.2d 124, 130 (Tex. Crim. App. 1996). To that extent, a defendant "must offer more than undeveloped assertions that the requested assistance would be beneficial." *Id.*

We review the trial court's ruling on this issue for an abuse of discretion. *Deason v. State*, 84 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). A review of the testimony reveals that West did not show a compelling need for the assistance of another forensic odontologist. Dr. Sims, who examined the victim and took pictures of the marks on the victim's chest, testified that she could not say whether the marks were bite marks. According to Sims, research suggested that if you do not view bite marks within the first three days, the chance of recovering any useful evidence is very small.

The State called forensic odontologist Dr. Brumit to testify regarding the marks on the victim's chest. Brumit, like any other potential expert, was forced to rely on the photographs taken by Sims. According to Brumit, because there was no ruler or scale in the photographs, she could not do a detailed analysis. She could only say that the mark was "possibly a bite mark" but she could not say it with any certainty. She also testified that without a scale, she could not measure the radius to make any sort of comparative analysis with a given mouth.

Given the facts and the testimony presented, we cannot say that the trial court abused its discretion in refusing to appoint another forensic odontologist. West failed to provide the trial judge with the necessary information to justify the appointment of an additional expert to analyze the marks on the victim's chest. *Robertson v. State*, 21 S.W.3d 554, 557 (Tex. App.—Waco 2000 pet. ref'd). West's third issue is overruled.

**Motion for New Trial**

In his fourth and fifth issues, West asserts that the court abused its discretion by failing to grant his motion for new trial based on newly discovered evidence—the police dispatch reports—and alternatively that the "ends of justice" required a new trial based on the discovery of the dispatch reports. In order to obtain a new trial upon "newly available" evidence, the following elements are required:

> (1) the newly discovered evidence was unknown to the movant at the time of trial;
> (2) the movant's failure to discover the evidence was not due to his want of diligence;
> (3) the evidence is admissible and not merely cumulative, corroborative, collateral or impeaching; and

(4) the evidence is probably true and would probably bring about a different result in another trial.

*Keeter v. State*, 74 S.W.3d 31, 36-37 (Tex. Crim. App. 2002); *Ashcraft v. State*, 918 S.W.2d 648, 653 (Tex. App.—Waco 1996, pet. ref'd) (citing *Moore v. State*, 882 S.W.2d 844, 849 (Tex. Crim. App. 1994)). The granting of a motion for new trial lies within the discretion of the trial court. We do not substitute our judgment for that of the trial court but rather decide whether the trial court's decision was arbitrary or unreasonable. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). Motions for new trial on grounds of newly discovered evidence are not favored and are viewed with great caution. *Drew v. State*, 743 S.W.2d 207, 225 (Tex. Crim. App. 1987); *Frank v. State*, 183 S.W.3d 63, 71 (Tex. App.—Fort Worth 2005, pet. ref'd); *Ashcraft*, 918 S.W.2d at 653.

Because the police dispatch reports were available to him before trial and witnesses accurately testified to the substance of the reports during trial, West cannot establish the second and third factors required to show that the trial court abused its discretion in denying his motion for new trial. Additionally, because the time frame of the police reports was presented at trial, we cannot say that the interests of justice required a new trial on this premise. We overrule West's fourth and fifth issues.

## Factual Sufficiency

In his sixth issue, West challenges the factual sufficiency of the evidence to support his conviction. Specifically he argues that because the jury found him not guilty on three counts, the evidence must be insufficient on the remaining counts.

In a factual insufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and manifestly unjust. *Watson v. State,* 204 S.W.3d. 404, 414-15 (Tex. Crim. App. 2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). "The court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact." *Johnson*, 23 S.W.3d at 7 (quoting *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996)). The appellate court "does not indulge in inferences or confine its view to evidence favoring one side of the case. Rather, it looks at all the evidence on both sides and then makes a predominantly intuitive judgment. . . ." *Id.* (quoting William Powers and Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence*," 69 TEXAS L. REV. 515, 519 (1991)). The nature of a factual sufficiency review authorizes an appellate court, although to a very limited degree, to act as the so-called "thirteenth juror" to review the factfinder's weighing of the evidence and disagree with the factfinder's determination. *Watson*, 204 S.W.3d at 416-17.

West essentially argues that because the jury did not believe the victim's testimony on three counts, her testimony was not credible on the remaining counts. However, the jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony. *Jaggers v. State,* 125 S.W.3d 661, 670 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) (citing *Penagraph v. State,* 623 S.W.2d 341, 343 (Tex. Crim. App. 1981)). The jury may believe all, some, or none of any

witness's testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Jaggers,* 125 S.W.3d at 670. As the reviewing court, we "should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony." *Vasquez v. State,* 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). Irrespective of that, West has not shown any reason to set aside the jury's verdict. We have reviewed the record and find the evidence sufficient to support the conviction. We overrule his sixth issue.

### Admission of Evidence

The State introduced statements made by West to the victim, which were overheard by her friends. Two friends were spending the night at the victim's house when she called West and put him on a speakerphone. Both friends testified that they heard West moaning and that the entirety of the conversation was sexual in nature. Later, West attempted to introduce the testimony of his roommate Grier who also claims to have heard the phone call between West and the victim. Grier testified that he did not hear West moan and that the conversation was not sexual in nature. When West began to ask Grier questions about specific statements that West allegedly made, the State objected to hearsay. In response to the State's hearsay objection, West stated that the testimony Grier would give was impeachment testimony that was justified because the victim's friends were permitted to testify about the telephone conversation. The State's objection was sustained. In his final issue, West argues his roommate Reginald Grier should have had the opportunity to deny hearing him make specific statements of a sexual nature.

To preserve a complaint that the trial court erroneously excluded evidence, the proponent of the evidence must make an offer of proof or the substance of the excluded evidence must be apparent from the context. *See* TEX. R. EVID. 103(a)(2); *Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998) (per curiam); *Haygood v. State*, 127 S.W.3d 805, 812 (Tex. App.—San Antonio 2003, pet. ref'd); *Guidry v. State*, 121 S.W.3d 849, 853 (Tex. App.—Beaumont 2003, no pet.). Because West did not make an offer of proof and the substance of the testimony at issue is not apparent from the context, his seventh issue presents nothing for review. *Id.* Accordingly, we overrule his final issue.

**Conclusion**

Having overruled all of West's issues, we affirm the trial court's judgment.

BILL VANCE
Justice

Before Chief Justice Gray,
     Justice Vance, and
     Justice Reyna
Affirmed
Opinion delivered and filed December 3, 2008
Do not publish
[CRPM]