**Opinion filed April 17, 2025**



## In The

# Eleventh Court of Appeals

_____

## No. 11-24-00018-CR

_____

**TIMOTHY LYNN RHODES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 15913-D**

## O P I N I O N

In a multi-count indictment, Appellant, Timothy Lynn Rhodes, was charged with one count of continuous sexual abuse of a young child (Count One), a first-degree felony, and two counts of indecency with a child (Counts Two and Three), each a second-degree felony. TEX. PENAL CODE ANN. § 21.02(b), (h) (West Supp. 2024), § 21.11(a)(1), (d) (West 2019). The jury convicted Appellant of all charged

offenses and assessed his punishment at life imprisonment in the Institutional Division of the Texas Department of Criminal Justice (TDCJ) for Count One, and twenty years' imprisonment in TDCJ and a $5000 fine each for Counts Two and Three. The trial court sentenced Appellant accordingly, ordered that the sentences imposed be served concurrently, and signed separate judgments for each count.

In three issues, Appellant contends that: (1) the evidence is insufficient to show that he was seventeen or older at the time the alleged offenses were committed; (2) the trial court erred when it ordered in its judgments that Appellant must obtain a driver's license or identification card that identifies him as a sex offender; and (3) the trial court's judgment for Count One should be modified to delete the $100 fine that was ordered "for Certain Child Sexual Assault and Related Convictions," because this fine was neither assessed by the jury nor orally announced by the trial court. *See* TEX. CODE CRIM. PROC. ANN. art. 102.0186 (West Supp. 2024). We modify and affirm.

## I. *Factual Background*

At the time these offenses were committed, Appellant lived in a house with his wife or girlfriend, Misti Bowen, and five children. The offenses for which Appellant was indicted concern the three oldest children: M.B., H.R., and N.B.[1] M.B. and N.B. are Appellant's stepchildren; H.R. is Appellant's biological child.

The guilt/innocence phase of trial lasted three days—January 23 through January 25, 2024; the punishment phase commenced and concluded on January 25. H.R. was seventeen at the time of the trial. She testified that she moved in with Appellant, Misti, and the other children after previously living in foster care, and that she had lived with them for three or four years before the sexual abuse began.

---

[1]In Count One, the indictment originally included allegations that another child in the household was also a victim, but the State abandoned those allegations before trial commenced.

She testified that she was born on August 1, 2006, and that she was thirteen when Appellant sexually abused her. H.R. stated that the household was a tense one and that Appellant and Misti argued frequently and combatively. According to H.R., Appellant groped her breasts and "butt" sometime in March 2020.

Later the following year, M.B. told H.R. that Appellant had sexually abused M.B.; this prompted H.R. to text her biological mother and advise her of this. After they discussed what had occurred, H.R. and her mother agreed that H.R. would tell her school counselor the next day. H.R.'s mother called the police and Child Protective Investigations (CPI, formerly Child Protective Services), and the following day, after H.R. had contacted the school counselor, police officers came to the school and took her to the Child Advocacy Center to be interviewed by a forensic investigator.

M.B. was sixteen at the time of trial. Her birthdate is April 24, 2007. She testified that she had lived with Appellant and her biological mother, Misti, since she was three. The household was chaotic and Appellant and Misti argued and fought often.

M.B. testified that she was nine or ten when Appellant first sexually assaulted her in 2016. M.B. testified that Appellant sexually assaulted her again, in the same manner, a few weeks later. According to M.B., Appellant sexually assaulted her continuously, in his bedroom, in her bedroom, and in the living room of their house, on multiple occasions.

In February 2021, M.B. told H.R. that Appellant was sexually abusing her; the next day at school, a CPI investigator spoke with her, and she was later interviewed by a forensic investigator. M.B. testified that she recalled that Appellant had sexually assaulted her only a few days before this incident. She also testified that between 2016 and 2021, Appellant had sexually assaulted her more than twenty

times, and that the longest gap she could recall between the assaults was a week. When asked if her testimony was that Appellant had assaulted her two hundred times, M.B. stated she was not certain about the precise number of times that she had been sexually abused by Appellant, but that she was "pretty positive" that the length of time between sexual assaults was a week.

During cross-examination, M.B. agreed that Appellant had sexually assaulted her hundreds of times. M.B. stated that she did not recall telling the forensic interviewer that she had been assaulted twenty-five to thirty times or that it had been over a month since the last time Appellant had sexually assaulted her; however, she agreed that she told the forensic interviewer that the first time she recalled being sexually assaulted by Appellant she was twelve, not nine or ten. She testified that she remembered the details of Appellant's sexual abuse better as time progressed, that she had not previously told anyone she was nine or ten when Appellant first sexually assaulted her, and that the number of sexual assaults committed by Appellant was "in the hundreds" and had occurred on a weekly basis.

N.B. was fifteen at the time of trial. Her birthdate is August 22, 2008. She testified that when she was eleven, Appellant sexually abused her by making her touch his genitals. N.B. testified that after the first incident, the same type of sexual abuse occurred again more than fifty times. According to N.B., on one occasion she observed Appellant sexually assaulting M.B. As she walked by Appellant's bedroom, the bedroom door was open, and she saw Appellant "having sex" with M.B.

Richard Parks, Appellant's employer, testified that, as of the time of trial, Appellant had worked for him for thirteen or fourteen years. Appellant's sister-in-law, Jennifer Chilson, testified that she has known Appellant for seventeen years. Jeremy Martinez, Misti's cousin, testified that he has known Appellant through Misti

for ten or twelve years. During the punishment phase,[2] Appellant's brother testified that Appellant is thirty-eight years old; Appellant's age was also referenced in closing arguments.

## II. *Analysis*

### A. *Sufficiency of the Evidence*

In his first issue, Appellant only challenges the sufficiency of the evidence to support his conviction for Count One, continuous sexual abuse of a young child. Specifically, Appellant contends that the State failed to adduce any evidence that he was seventeen or older at the time of the offense.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

In conducting a sufficiency review, we consider all of the evidence admitted at trial, including evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Brooks*, 323 S.W.3d at 899; *Clayton v. State*, 235 S.W.3d 722, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard is deferential and accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh

---

[2]After the victims testified, Appellant moved for a directed verdict on all counts but did not argue that the State had failed to prove his age. Similarly, Appellant's trial counsel did not address Appellant's age during closing argument, but rather focused on the witnesses' credibility.

the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Thus, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326, *Merritt v. State*, 368 S.W.3d 516, 525–26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

The evidence need not directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the defendant's guilt, and circumstantial evidence, alone, can be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to the defendant's guilt if the cumulative force of all incriminating circumstances is sufficient to support the defendant's conviction. *Hooper*, 214 S.W.3d at 13. Therefore, in evaluating the sufficiency of the evidence, we treat direct and circumstantial evidence equally, and we must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *Isassi*, 330 S.W.3d at 638; *Hooper*, 214 S.W.3d at 13.

A person commits the offense of continuous sexual abuse of a young child if (1) during a period that is thirty or more days in duration, he commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims, and (2) at the time of the commission of each act of sexual abuse, the actor is seventeen or older and the victim is a child younger than fourteen, regardless of whether the actor knows the age of the victim at the time the

offense is committed. PENAL § 21.02(b). "[A]ct of sexual abuse" means an act that violates one or more penal laws as specified in Section 21.02(c), which includes the offenses of indecency with a child by contact and aggravated sexual assault of a child. *Id.* § 21.02(c)(2), (4); *see also id.* §§ 21.11(a)(1), 22.021(a). A person commits the offense of indecency with a child if he engages in sexual contact with a child that is younger than seventeen. *Id.* § 21.11(a)(1).

Although no direct testimony regarding Appellant's age was presented to the jury during the guilt/innocence phase, the jury may nonetheless use their "common sense and apply common knowledge, observation, and experience gained in the ordinary affairs of life when giving effect to the inferences that may reasonably be drawn from the evidence." *Coleman v. State*, 631 S.W.3d 744, 751 (Tex. App.— Houston [14th Dist.] 2021, pet. ref'd) (quoting *Aguilar v. State*, 263 S.W.3d 430, 434 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd)); *Robertson v. State*, 21 S.W.3d 554, 557 (Tex. App.—Waco 2000, pet. ref'd). Here, ample evidence was admitted from which the jury could have logically inferred that Appellant was at least seventeen when the requisite time alleged by the State began. *See Reynolds v. State*, No. 13-13-00072-CR, 2013 WL 6729953, at *2 (Tex. App.—Corpus Christi– Edinburg Dec. 19, 2013, pet. ref'd) (mem. op., not designated for publication) ("[O]ur review of the record reveals that there were several pieces of information from which the jury could infer that appellant was at least seventeen at the beginning of the time period alleged by the State." (citing *Robertson*, 21 S.W.3d at 558)).

H.R. testified that she was Appellant's biological daughter, that she was seventeen at the time of trial, and that she was born in August 2006. She testified that Appellant sexually abused her in March 2020 when she was thirteen. Logically, if Appellant was younger than seventeen at the time he sexually abused thirteen-year-old H.R. in 2020, as he suggests, simple math shows that he would have only

been three or four when H.R., his biological child, was born.  Thus, the evidence supports the jury's logical deduction and use of common sense to conclude, or at least infer, without the presentation of direct testimony of Appellant's age, that he was older than seventeen at the time he committed this offense.

Similarly, M.B. testified that she was sixteen at the time of trial and that she was born in April 2007.  She testified that she began living with Appellant when she was three.  According to M.B., she was first sexually assaulted by Appellant when she was nine or ten and that the sexual abuse continued weekly between 2016 and 2021.  Therefore, for Appellant to have been younger than seventeen during this approximately five-year period of sexual abuse, he must have been around eleven when, as her stepfather, he began sexually abusing nine or ten-year-old M.B., and five when M.B. first moved in with he and Misti.  Like with H.R., this evidence supports the jury's logical deduction and use of common sense to conclude, or at least infer, without the benefit of direct testimony of Appellant's age, that he was older than seventeen at the time he committed these offenses.

The same holds true for N.B.  She testified that she was fifteen at the time of trial, and that she was born in August 2008.  She testified that Appellant began sexually abusing her when she was eleven.  As with the other victims, simple math dispels Appellant's argument because Appellant must have been the approximate age of, or barely older than, his victims—his biological child and stepchildren—to have been younger than seventeen during the periods of sexual abuse.  Again, this evidence supports the jury's logical deduction and use of common sense to conclude, or at least infer, without the benefit of direct testimony of Appellant's age, that he was older than seventeen at the time he committed these offenses.

Finally, witnesses presented by Appellant also testified about having known him over time.  For example, Chilson testified that she has known Appellant for

seventeen years and that she had been married to his brother for sixteen years as of the time of trial. Martinez has known Appellant throughout Appellant's and Misti's relationship, which has spanned ten or twelve years. And Parks had worked with Appellant for thirteen or fourteen years as of the time of trial. In each instance, Appellant would have been a very young child or an infant at the time these adults came to either employ or know him, for Appellant to have been younger than seventeen at the time he sexually abused his victims. This evidence supports the jury's logical deduction and use of common sense to conclude, or at least infer, without the benefit of direct testimony of Appellant's age, that he was older than seventeen at the time he committed these offenses.

Viewing the cumulative force of all the evidence in the light most favorable to the verdict, the record contains evidentiary puzzle pieces that the jury could have carefully fit together to rationally find beyond a reasonable doubt that Appellant was seventeen or older at the time that he sexually abused M.B., H.R., and N.B. *See Flowers v. State*, 220 S.W.3d 919, 923 (Tex. Crim. App. 2007) ("The trier of fact fits the pieces of the jigsaw puzzle together and weighs the credibility of each piece."). Therefore, we conclude that the record before us contains sufficient evidence from which a rational jury could have logically inferred and found beyond a reasonable doubt that Appellant was seventeen or older when he committed the offenses of continuous sexual abuse of a young child and indecency with a child as charged in the indictment. Accordingly, we overrule Appellant's first issue.

B. *Requested Modifications in the Judgments*

In his second and third issues, Appellant contends that the trial court erred when it (1) ordered in its judgments that Appellant must obtain a driver's license or identification card that identifies him as a sex offender, and (2) assessed a $100 fine "for Certain Child Sexual Assault and Related Convictions" in its judgment for

9

Count One because this identification requirement and the associated fine were neither assessed by the jury nor orally pronounced by the trial court at sentencing. *See Ex parte Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002) (When an orally pronounced sentence and the sentence recited in the trial court's written judgment vary, the trial court's oral pronouncement controls.); *see* CRIM. PROC. art. 102.0186. As such, Appellant requests that both the identification requirement and the $100 fine be deleted from the relevant judgments.

Not all parts of a trial court's judgment are part of the sentence imposed; in fact, only those parts of the judgment that are deemed to be punitive are part of the sentence. *See Weir v. State*, 278 S.W.3d 364, 365–66 (Tex. Crim. App. 2009) (distinguishing fines, as "clearly punitive," from court costs, which are not). For example, a fine is punitive in nature and intended to be part of a defendant's sentence; therefore, to be assessed, it must be orally pronounced at sentencing. *Armstrong v. State*, 340 S.W.3d 759, 767 (Tex. Crim. App. 2011). On the other hand, a trial court's assessment of court costs against a convicted defendant in its written judgment need not be orally pronounced at sentencing because court costs are not considered to be punitive. *Weir*, 278 S.W.3d at 367.

### 1. *Driver's License or Identification Card*

Contrary to Appellant's assertion, the requirement that a sex offender obtain a driver's license or personal identification card that identifies him as a sex offender is not punitive and therefore not a part of the imposed sentence. Article 42.016 of the Code of Criminal Procedure provides, in relevant part, that if a person is convicted of an offense and, as a consequence, the person must register as a sex offender pursuant to Chapter 62, the trial court *shall* (1) require the person to apply to the Texas Department of Public Safety (DPS) for an original or renewed driver's license or personal identification card within a designated timeframe and to annually

renew the driver's license or identification card, and (2) direct an order to DPS that any driver's license or personal identification card issued to the convicted felon must denote that the person is subject to the Chapter 62 sex offender registration requirements. CRIM. PROC. art. 42.016. Although Appellant concedes that this identification requirement is a "collateral" or "non-punitive" matter, he nonetheless contends that it should not be included in the trial court's judgment for Count One because other laws already require that he obtain a driver's license or personal identification card that identifies him as a sex offender. *See id.* arts. 62.053(a)(1)(E) (prerelease notification that the person subject to sex offender registration requirements must apply for an original or renewed driver's license or identification card); 62.060 (West 2018) (requiring that a person subject to sex offender registration requirements apply for an original or renewed driver's license or identification card). We disagree with Appellant's contention that the existence of these other statutory provisions forecloses the trial court's authority to include such a requirement in its judgment pursuant to Article 42.016. *See id.* art. 42.016(2). Accordingly, we overrule Appellant's second issue.

### 2. *Child Abuse Prevention Fine*

As for Appellant's third issue, the State concedes that the $100 fine was neither assessed by the jury nor orally pronounced by the trial court, and that typically this would necessitate modifying the trial court's judgment to delete the fine amount. *See, e.g.*, *Aburu v. State*, No. 02-23-00089-CR, 2023 WL 8643039, at *1 (Tex. App.—Fort Worth Dec. 14, 2023, no pet.) (mem. op., not designated for publication) (modifying the trial court's judgment to delete a $100 fine that was neither assessed by the jury nor orally pronounced by the trial court at sentencing). However, in this case, the State avers that this fine was instead assessed as a "court cost" and that the legislature has indicated that the classification of the assessment

at *the time the offense was committed* is controlling. Therefore, the State requests that we modify the trial court's judgment for Count One to recite that a fine was not assessed in this instance, but rather a $100 "fee" was assessed as a court cost as directed by the legislature.

The $100 fine of which Appellant complains—the Child Abuse Prevention fine—was assessed by the trial court pursuant to Article 102.0186. *See* CRIM. PROC. art. 102.0186. The "Cost Act," which became effective on January 1, 2020, amended this Article to, among other things, reclassify this $100 fee as a fine, rather than a court cost. *See* Act of May 23, 2019, 86th Leg., R.S., ch. 1352, §§ 2.40, 5.01, 5.04, 2019 Tex. Gen. Laws 3981, 4006, 4035. With respect to its "Transition and Effective Date," the Cost Act provides:

> SECTION 5.01. Except as otherwise provided by this Act, the changes in law made by this Act apply only to a cost, fee, or fine on conviction for an offense committed on or after the effective date of this Act. An offense committed before the effective date of this Act is governed by the law in effect on the date the offense was committed, and the former law is continued in effect for that purpose. For purposes of this section, *an offense was committed before the effective date of this Act if any element of the offense occurred before that date.*

*Id.* § 5.01 (emphasis added).

Here, some of the elements of Appellant's continuous sexual abuse offense as charged under Section 21.02 occurred prior to January 1, 2020. Recently, however, and after Appellant and the State submitted their briefs in this appeal, the Court of Criminal Appeals addressed the operation and effect of the Cost Act's "Transition and Effective Date" clause in Section 5.01, and the Imposition of Court Costs in Criminal Proceedings statute in Section 51.608 of the Government Code. *See Bradshaw v. State*, 707 S.W.3d 412, 416–20 (Tex. Crim. App. 2024); *see* TEX. GOV'T CODE ANN. § 51.608 (West 2023). Section 51.608 provides:

Notwithstanding any other law that establishes the amount of a court cost collected by the clerk of a district, county, or statutory county court from a defendant in a criminal proceeding based on the law in effect on the date the offense was committed, *the amount of a court cost imposed on the defendant in a criminal proceeding must be the amount established under the law in effect on the date the defendant is convicted of the offense*.

GOV'T § 51.608 (emphasis added).

In *Bradshaw,* the Court of Criminal Appeals harmonized these statutes and ultimately determined that "[t]he law governing court costs on the date the offense was committed states the court costs are determined based on *the date the defendant is convicted* of the offense." *Bradshaw*, 707 S.W.3d at 420 (citing GOV'T § 51.608) (emphasis added); *see also Cadena v. State*, No. 11-22-00225-CR, 2023 WL 8459093, at *8 (Tex. App.—Eastland Dec. 7, 2023, no pet.) (mem. op., not designated for publication) (same). Because Appellant was *convicted* of the charged offense after January 1, 2020, the provisions of the Cost Act apply here. *Bradshaw*, 707 S.W.3d at 419–20 (acknowledging that "[w]hile this plain-reading-of-the-statute-interpretation is consistent with the language of [Section 5.01], it is oddly circular"). Thus, under the Cost Act, the $100 Child Abuse Prevention fee is properly categorized as a fine, not a court cost. *See* Act of May 23, 2019, 86th Leg., R.S., ch. 1352, § 2.40, 2019 Tex. Gen. Laws 3981, 4006 (codified at CRIM. PROC. art. 102.0186). Accordingly, Appellant's third issue is sustained.

We have the authority to modify and reform a judgment when the necessary information is available to do so. TEX. R. APP. P. 43.2(b); *See Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992). Because the Child Abuse Prevention fine was neither assessed by the jury nor orally pronounced by the trial court at sentencing, we must

modify the trial court's judgment for Count One and the district clerk's bill of costs to delete the $100 fine.

## III.  *This Court's Ruling*

As modified, we affirm the judgment of the trial court for Count One.  In all other respects, the judgments of the trial court are affirmed.  *See* TEX. R. APP. P. 43.2(b).

W. STACY TROTTER

JUSTICE

April 17, 2025

Publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.